846 F.2d 72
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lucille NORDINGER, Plaintiff-Appellee,
v.
GIANT FOOD, INC., Defendant-Appellant.
 No. 87-2599.
 United States Court of Appeals, Fourth Circuit.
 Argued March 9, 1988.
Decided April 29, 1988.
 
 Carol T. Stone (John O. Easton, Jordan, Coyne, Savits & Lopata on brief) for appellant.
 David Machanic (Pierson, Ball & Dowd on brief) for appellee.
 Before HARRISON L. WINTER, Chief Judge, WIDENER, Circuit Judge and JAMES B. McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.
 HARRISON L. WINTER, Chief Judge.
 
 
 1
 Invoking diversity jurisdiction, Lucille Nordinger, sued Giant Food, Inc. for its negligence resulting in a sexual assault on her. Following a jury trial she was given judgment for $150,000. Giant appeals, contending that its motions for a directed verdict and a new trial should have been granted. Giant Food contends that (1) there was no legally sufficient evidence of negligence on its part; (2) there was reversible error in the jury instruction explaining that even if Giant had no legal duty to undertake a given level of security, nevertheless, if it assumed such a duty, the law required it to perform it properly; and (3) the court should have given an instruction disclaiming any special duty to protect business invitees against crimes perpetrated by third parties.
 
 
 2
 We affirm.
 
 I.
 
 3
 On April 8, 1985, at approximately 9:20 a.m., plaintiff, a sales representative for Coty Cosmetics, a division of Pfizer Pharmaceutical, arrived at the corporate headquarters of her client, Giant, in Landover, Maryland. As she entered the parking lot established for visitors, she noticed that it was unusually full. She then saw a young man, roughly 20 years old, walking within the lot, and assumed that he was trying to locate his car. She soon realized that the young man was peering into the cars. Plaintiff then found a parking space and, upon leaving her car, she was accosted by the young man who then brutally assaulted and sexually molested her. When plaintiff told him that he would be seen, the man told her to go ahead and scream because no one was in view. Ultimately, plaintiff saw a car enter the lot and when the driver, Mr. Chavis, left the car, she screamed to get his attention. The assailant then grabbed plaintiff's purse and ran. After an unsuccessful attempt to catch the assailant, Chavis returned to plaintiff. Chavis seated plaintiff in her car then went for help. Shortly thereafter, a Giant security guard, Lieutenant Pruitt, came to the scene.
 
 
 4
 On the 30 to 40 prior occasions that plaintiff had parked in defendant's lot, Mr. Belton had served as a security guard. At the time of the incident, however, Belton was away from the lot to let a construction truck and glass repairman enter the adjacent executive lot. The lot in which plaintiff parked was not only protected by a security guard, but also by a surrounding fence, two access gates, a lighting system and a guard tower.
 
 
 5
 The evidence was conflicting as to precisely how long Belton was gone at the time of the incident in question. Belton testified that he was not gone longer than about 20 minutes. When questioned by an insurance adjuster, however, Belton said that he left the lot between 10 and 20 minutes after coming on duty at 8:00 a.m. Since Belton did not return until some time after the attack on plaintiff, which occurred between 9:20 and 9:40 a.m., his absence may thus have been as long as an hour and a half.
 
 
 6
 As a result of the incident, plaintiff suffered various physical and emotional injuries and was absent from work for over six months. Plaintiff sued under several tort theories, all of which were dismissed except for two, negligence in failing to provide adequate security and failure to perform properly an assumed duty of care.
 
 II.
 
 7
 As a preliminary matter, we reject defendant's argument that plaintiff is procedurally foreclosed from presenting her theory of assumed duty. While it is true that the district judge granted defendant's motion for directed verdict on Count II of plaintiff's complaint, alleging that theory, he did so because in his view that theory was embraced in Count I which he submitted to the jury.
 
 III.
 
 8
 Defendant's argument that plaintiff's evidence was insufficient to submit her case to the jury is twofold: (1) plaintiff failed to establish a relevant standard of care; and (2) if defendant's negligence was based upon an assumed duty, defendant acted in conformity with the duty it assumed.
 
 
 9
 Because plaintiff produced sufficient evidence to show that defendant undertook an assumed duty of care, we reject the argument that plaintiff was required to establish the relevant standard of care. Under plaintiff's theory that defendant assumed a duty of care, the relevant standard of care is established by defendant itself. The sole inquiry is whether defendant carried out its duty reasonably. In this case a reasonable jury could have found that a condoned absence of a security guard for a period ranging from 20 minutes to one and one half hours would not meet the reasonable expectations of a person who always saw a security guard in attendance and who relied upon that guard for her safety.
 
 
 10
 We further reject defendant's argument that since defendant established its own security measures, and since its policy allowed its security guard to assist vehicles in entering the executive lot, Belton's absence was in conformity with defendant's assumed duty. Coupled with this argument defendant asserts that plaintiff's entire case rests upon a post hoc finding of negligence based upon Belton's single absence at the time of the incident.
 
 
 11
 In fact the finding of negligence in this case properly rests upon a finding that where defendant undertakes to provide a security guard during business hours, requiring that guard to perform additional duties that remove him from the lot for extended periods of time does not meet the reasonable expectations of persons depending upon the guard for protection. Plaintiff's case therefore does not rest upon a post hoc finding of negligence inferred from Belton's single absence, but rather rests upon the claim that in undertaking to provide live security during daytime hours, condoning absences of twenty minutes or longer without replacement is negligent.
 
 
 12
 The logical extension of defendant's argument would render any claim of negligence in carrying out an assumed duty impossible. As plaintiff correctly maintains, defendant could always justify a deviation from the exercise of reasonable care in carrying out its assumed duty by claiming that the deviation defined the limits of the duty undertaken and, therefore, defendant is not negligent. This the law of Maryland will not allow. See, e.g., Scott v. Watson, 278 Md. 160, 359 A.2d 548 (Md.1976) ("We think it clear that even if no duty existed to employ the particular level of security measures provided by the defendants, improper performance of such a voluntary act could in particular circumstances constitute a breach of duty.") Id. at 171, 359 A.2d at 555. We therefore hold that plaintiff produced sufficient evidence for the district court judge to submit the case to a jury.
 
 IV.
 
 13
 We further reject defendant's argument that the district court erred in instructing the jury that
 
 
 14
 [e]ven if no duty existed to employ the particular level of security measures provided by the defendant, the defendant has a duty to properly perform security measures, once such a duty is assumed.
 
 
 15
 The law of assumption of duty is well established in Maryland. In Pennsylvania R. Co. v. Yingling, 148 Md. 169, 129 A. 36 (1926), the Maryland Court of Appeals held that even if defendant could not be held negligent for limiting its watchman's hours to the daytime, it could be held negligent for accidents which occurred during the watchman's absence from his daytime shift. Id. at 176-7, 129 A. at 38-39. The Maryland Court of Appeals reiterated this principle more recently in Scott v. Watson, 278 Md. at 171, 359 A.2d at 555. Because the jury instruction correctly stated a directly applicable legal doctrine, we find no error.
 
 V.
 
 16
 Finally, we reject defendant's argument that the district court erred in refusing to instruct the jury that
 
 
 17
 [t]here is no special duty imposed upon [defendant] to protect business invitees against crimes perpetrated by third parties on its premises.
 
 
 18
 We find that the substance of defendant's proposed jury instruction was adequately included in the instruction given, that "defendant is not a guarantor or insurer of the safety of its premises."
 
 
 19
 AFFIRMED.